[6, 7] The plaintiff asks for damages and accounting. The question of damages was left open for future consideration, but, if this decision is correct, I do not see how any damages can be estimated. Damage is allowed when intentional fraud is found. N. K. Fairbank v. Windsor, 124 Fed. 200, 61 C. C. A. 233. No fraud is found here. The only evidence that defendant's article would be taken for plaintiff's was created for the occasion, and not improperly, but, when one of plaintiff's agents held up a Victor Trap and asked for one like it, he sometimes got a Triumph, which is very much like it. That was what plaintiff wanted to occur. Such evidence is not a foundation for damages.

The prayer of the complaint in that regard is denied, but I will entertain a motion to modify the judgment so as to allow a reference on cause shown. As neither party has maintained its contention in this case, judgment is without costs to either as against the other.

---

ROBINSON v. NEW YORK, N. H. & H. R. CO.    (No. 6456.)

(Supreme Court, Appellate Division, First Department.    December 31, 1914.)

1. CARRIERS (§ 255*)—CARRIAGE OF PASSENGERS—RIGHT TO TRANSPORTATION
   —EXHIBITION OF TICKET.
   Plaintiff's husband purchased a ticket over defendant's road and that of a connecting carrier, but instead of using it himself he delivered the ticket to plaintiff, who attempted to use it for her return in the direction opposite to that stated on the ticket. The conductor of the connecting carrier took up the ticket and permitted the plaintiff to ride to the junction point. He gave her no receipt or other evidence that her fare had been paid. Defendant's conductor refused to accept plaintiff's statement as to the facts, and made insulting and threatening remarks to her, charging her with attempting to beat the railroad company. *Held* that, plaintiff's only right to transportation being based on her possession of the ticket, she could not claim the rights of a passenger without exhibiting the ticket.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1027–1032; Dec. Dig. § 255.*]

2. CARRIERS (§ 255*)—CARRIAGE OF PASSENGERS—AUTHORITY OF CONNECTING
   CARRIER.
   The conductor of the connecting carrier was not authorized to agree on behalf of the defendant that plaintiff might be carried without exhibiting a ticket.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1027–1032; Dec. Dig. § 255.*]

   Dowling and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Augusta Robinson against the New York, New Haven & Hartford Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

James W. Carpenter, of Brooklyn, for appellant.
A. S. Gilbert, of New York City, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

INGRAHAM, P. J. The defendant operates a line of railway from New York to Springfield, Mass., which at Springfield connects with a line of railway operated by the New York Central & Hudson River Railroad Company, from that city to South Framingham, Mass. There are close connections between these railroads, and the same cars run from New York over the New Haven Railroad to Springfield and from Springfield over the New York Central lines to South Framingham. The complaint alleges that on the 16th of August, 1912, the plaintiff, through her husband at the county of New York, purchased of this defendant at its office in the city of New York a ticket of transportation between New York and South Framingham, Mass.; that plaintiff did not use the ticket for transportation from New York to South Framingham, but traveled from New York to South Framingham on mileage tickets purchased at the same time by her husband; that on the 22d of August, 1912, the plaintiff boarded a train of this defendant at South Framingham for the purpose of being transported to the city of New York; that while on the journey between South Framingham and New York City, and between South Framingham and Worcester, Mass., this plaintiff tendered such ticket of transportation to the conductor in charge of the train, and the conductor then in charge of the train did accept such ticket as entitling the plaintiff to transportation from South Framingham, Mass., to New York, and in place of said ticket delivered to the said plaintiff a check or card used by conductors generally for the purpose of identification; that thereafter, and between Worcester and Springfield, the conductor in charge of the train collected such card of identification; that at Springfield the conductor in charge of the train on which the plaintiff was riding was replaced by another; that thereafter, and while the train was between Springfield, Mass., and New York City, on the defendant's line of railway, the conductor then in charge of the train called on the plaintiff for a ticket of transportation; that the plaintiff stated to the conductor that she had already surrendered such ticket to the conductor previously in charge of the train; that thereupon the conductor, the agent of the defendant, stated to the plaintiff in loud tones that she was trying to beat her way and cheat the railroad, that he had such experiences before, and knew how they worked, threatened to forcibly remove plaintiff from the train, and that the conductor, the agent of the defendant, continued to abuse, annoy, slander, and scandalize the plaintiff, and threaten to forcibly remove plaintiff from the train, until the train arrived at the city of New York; that plaintiff was in delicate health, and the actions of the defendant's agent, the conductor in charge of said train, were such as to throw this plaintiff into a condition of extreme nervousness, as a result of which she became seriously ill, and has continued to be sick and ill in mind and body, to her damage in the sum of $20,000.

The defendant interposed an answer, which denied the substantial allegations of the complaint, and as a defense alleged that the ticket purchased by the plaintiff was subject to a contract, stamped thereon, which provided that in selling the ticket for passage over its lines the company acts only as agent, and is not responsible beyond its own

line, and that if the conductor on the train referred to in the fourth
and fifth paragraphs of the complaint took up the ticket of the plain-
tiff herein, this defendant was not in any way responsible therefor.

On the trial the husband of the plaintiff testified that on the day
the witness and the plaintiff left New York for South Framingham
he first bought two separate tickets from the defendant at the Grand
Central Station; that after making this purchase he bought what was
designated as a 500-mile mileage ticket; that with these two tickets
in his possession plaintiff and the witness traveled from New York
to South Framingham, using for transportation the mileage ticket,
and not using the separate tickets from New York to South Framing-
ham; that a few days afterwards he returned from South Framing-
ham to New York, using the mileage ticket for transportation, but
leaving the plaintiff and his daughter at South Framingham in pos-
session of the two separate tickets from New York to South Framing-
ham.

The plaintiff testified that she stayed in South Framingham a week,
and started to return to New York on the 22d of August, 1912; that
when she boarded this train at South Framingham she had the two
tickets that had been purchased by her husband in New York the day
they left, which he had delivered to the plaintiff at South Framingham
before he left for New York; that these tickets read, "From New
York to Springfield" and "From Springfield to South Framingham";
that soon after they got on the train at South Framingham the con-
ductor in charge of the train asked the plaintiff for her tickets; that
plaintiff handed him these two tickets, and he accepted them, put them
in his pocket, and gave to the plaintiff in exchange therefor two red
or blue slips; that after the train reached Worcester, which is still
on the New York Central Railroad line, another conductor came
through the car and took up these two slips from the plaintiff, and
they continued, apparently without question, to Springfield; that at
Springfield the car on which the plaintiff was riding was transferred
to the defendant's road, and thereafter proceeded on its way to New
York on the defendant's railroad; that after the train left Springfield,
on its way to New Haven, another conductor in charge of that train
asked the plaintiff for her ticket, to which plaintiff replied, "We
haven't any; we gave our tickets to the first conductor," whereupon
the defendant's conductor said, "Come on! come on! I heard that kind
of talk before; you can't give me that kind of talk; I have heard
that kind of talk before; * * * I must have tickets or put you
off; you must either pay your money here, or I must have your
tickets;" that, plaintiff having no tickets to give him, he went away,
and came back before the train stopped, and said, "What are you
going to do about it? what are you going to do?" to which plain-
tiff replied, "We can't do anything about it at all; we have given up
our tickets, and that is the only thing we have." The conductor then
said, "Then you must pay your fare." By that time the train had
stopped and the conductor went away. After the train started, he
came a second time and repeated the inquiry as to what the plaintiff
was going to do about it, and said, "I ain't going to have any more

of that talk; you must either give your tickets or money, or I am going to throw you off." He then went away, but subsequently returned, and, as the plaintiff testified, "He went on then, and came back at every stop, and everything was the same." At one time he said, "Come on! you are nothing but a couple of dead beats; give me your tickets, or pay your fare, or I will throw you off;" that it went along that way until the last stop; that plaintiff at one time offered to give him her address; that he told plaintiff to "shut up," and said to a companion who was with the plaintiff, "That woman talks too much, anyway; she is too nervous; I can't talk to her;" that a passenger interfered, and the conductor said to him, "You shut up! I am doing this; I am running this train;" that the conductor made these statements in a very loud tone of voice; that finally, at the last station before arriving in New York, the conductor asked the plaintiff or her companion for their addresses, and then the discussion stopped, and the plaintiff was allowed to travel to New York without further molestation. Plaintiff further testified that she became very nervous and had hysterics on the train; that when she got to Baltimore, where she resided, on the Friday following, she was prostrated; that the next day she sent for her doctor, and was confined to her bed until the 25th of October, when she had a miscarriage, and which was two months after the incident in the train.

The plaintiff's physician, who resides in Baltimore, was called, and testified that he saw the plaintiff on August 28, 1912; that she was then three months pregnant and in a state of extreme agitation; that this condition kept up for about six weeks, and on the 25th of October she had a miscarriage; that the indications were that the child had died five or six weeks before the miscarriage finally occurred. Then, in answer to a hypothetical question, he said that he believed the miscarriage resulted from the undue terror and excitement on the day of travel.

It was proved by the defendant that the regular form of ticket sold from New York to South Framingham read, "From New York to Springfield," and "From Springfield to South Framingham"; that from New York to Springfield was upon the line of the New York, New Haven & Hartford Railroad; that the ticket from Springfield to South Framingham read, "The New York, New Haven & Hartford Railroad Co., on account of New York Central & Hudson River R. R.; good for one first class passage from Springfield to So. Framingham, Mass.;" that no tickets are sold at the Grand Central Station in New York City reading "From South Framingham, Massachusetts, to New York." The conductor on the New York Central Railroad from South Framingham to Springfield testified that on the day in question he did not take up any ticket, or any two tickets, for transportation between South Framingham and Springfield, which read, on their face, "From Springfield to South Framingham, Mass.," and "From New York to Springfield"; that it is not customary to accept tickets in any direction on the Boston & Albany Railroad with a contract attached like that on the ticket in question; that no such ticket could be found after the complaint of the plaintiff had been received by the defendant. The conductor on the train from Springfield to New York gave his version of

the conversation between the plaintiff and her companion and himself, and there was evidence corroborating the plaintiff's account of the transaction. The defendant moved to dismiss the complaint, which motion was denied, and the court submitted the question to the jury.

After a statement of the testimony, the court first submitted to the jury the question as to whether there was a contract between the plaintiff and the defendant, instructing them that, if there was no contract, the jury must find for the defendant; that, if the jury should find there was such a contract, they must then determine whether that contract was broken; that, if there was a contract, it obligated the defendant, not only to transport the plaintiff, but to accord to her respectful and courteous treatment and to protect her from insult on the part of its own employés; and then instructed the jury that if they found that the defendant did not perform that duty, did not accord to the plaintiff respectful and courteous treatment, and did not protect her from insult on the part of its employés, then the jury could find in favor of the plaintiff. On the question of damages the jury were instructed that the amount was entirely within the judgment and control of the jury; that the jury had to be satified that the miscarriage was the direct consequence of the incident before they could allow the plaintiff any damages on that account; and then, if they found for the plaintiff, they were to return a verdict which would adequately compensate for the injury which she has suffered, both physical and mental.

[1] Thus the whole basis of this action was the violation of a contract, and to sustain the recovery there must be proof of such a contract, and that contract must be one to carry the plaintiff from South Framingham to New York. The plaintiff does not dispute, apparently, that she knew that the defendant's line ended at Springfield, and that the line from Springfield to South Framingham was operated by the New York Central & Hudson River Railroad Company. Her husband had purchased a ticket from New York to South Framingham, and had thereby secured a contract of the defendant railroad to carry her from New York to Springfield. I do not think that upon this testimony it can be said that the conditions printed upon this ticket form part of the contract of carriage, as apparently they were not called to the attention of the purchaser of the ticket or the plaintiff. There was no evidence that the fare charged was less than the usual fare in consequence of any special contract made by the passenger. So far as the evidence goes, the ticket was simply a token to show that the purchaser of the ticket had paid his fare from New York to South Framingham—the defendant to carry the passenger to Springfield, and, as agent of the New York Central Company, undertaking that that company would carry the passenger from Springfield to South Framingham. On the face of the ticket the defendant did not undertake to make an individual contract for any transportation, except on its own lines. It received the passage money from Springfield to South Framingham as agent of the New York Central Company, and the contract as between those stations was made by the New York Central Company, and not by the defendant.

[2] I assume that the ticket agent at South Framingham was also the agent of the defendant to make contracts in regard to transportation from Springfield to New York with passengers commencing their journey at South Framingham, and that it would be a breach of contract by the defendant to repudiate any contract made by the ticket agent or station master at South Framingham in regard to such transportation; but I do not see how such a relation could exist between a conductor on the New York Central Railroad, in charge of a train from South Framingham to Springfield, and the defendant. The defendant had conferred no authority on such conductor to make contracts on its behalf, or to undertake to allow a passenger to ride from Springfield to New York without a ticket, or some evidence that the passenger had paid his fare. If the plaintiff's story is true, as I look at it, it was the action of the conductor of the New York Central Railroad in taking up the plaintiff's ticket over the defendant's road that deprived the plaintiff of evidence of such payment. From the form of the ticket itself it is apparent that, if the conductor was to accept such a ticket for passage, he must separate the coupon which represented the passage from New York to Springfield, and deliver that to the passenger, keeping the main portion of the ticket, which represented the passage from Springfield to South Framingham as a voucher for his road. Yet on the coupon or check representing the passage from New York to Springfield it is expressly provided, "This check is not good if detached"—the contract, or whatever it may be called, being upon the portion of the ticket which gave a right to a passage from Springfield to South Framingham, Mass.

I think it is not at all an unreasonable regulation that a passenger on a train should be required to exhibit to the conductor some evidence that the fare has been paid, and this evidence is what the defendant's conductor demanded. It is quite evident that it would be entirely impracticable for a conductor on a train to take the word of every passenger that his fare had been paid, without the production of some evidence of that fact. It seems to me that before a passenger can establish the existence of a contract he must produce to the conductor of the train some evidence that such a contract actually existed. The mere fact that the money had been deposited with a ticket agent in New York as payment for a passage from New York to Springfield was not of itself sufficient to establish a contract, unless the passenger had produced to the conductor some evidence of such payment. Assuming that the station agent at South Framingham had stated to the plaintiff that this ticket would be received on the defendant's road for passage from South Framingham to New York, and that certainly is as much as can be assumed from this evidence, the plaintiff never produced the ticket to the agent of the defendant, nor was there any evidence, except the mere word of the plaintiff, that she had ever had such a ticket.

The complaint alleges that the plaintiff purchased the ticket through her agent, her husband; but there was no evidence to sustain that allegation. What the husband did was to purchase the ticket on his own account, and afterwards present the ticket to the plaintiff, and she claimed

that she had a right to transportation because of the fact that she was in possession of that ticket. But she was not in possession of the ticket when she commenced her trip on the defendant railroad, and she never presented that ticket to the defendant as the basis of her claim to transportation. If she had lost the ticket on the train from South Framingham to Springfield, and so was unable to produce it after the departure of the train from Springfield for New York, I do not understand that there could be any claim of a contract by the defendant to carry her to New York. According to her story she had delivered the ticket to the conductor of the New York Central Railroad, and that conductor had accepted the ticket for passage from South Framingham to Springfield. He gave her no check or evidence that her fare to New York had been paid, or that there was any contract in existence which would entitle her to transportation to New York. The defendant had certainly made no contract to transport her from Springfield to New York. It had no dealings with the plaintiff whatever, and her only claim to transportation was that her husband had bought a ticket in New York by which a contract was made which obligated the defendant to carry her from New York to Springfield. I can find in the testimony no evidence of any contract by which the defendant had agreed to carry this plaintiff from Springfield to New York.

As before stated, there is no evidence to show that the conductor of the New York Central Railroad was an agent of the defendant, or that his unauthorized act in taking up this ticket bound the defendant. The only possible right that the plaintiff could have was to claim that, on presenting the ticket to the defendant's conductor at Springfield, which showed that the plaintiff had paid her fare, entitling her to transportation over the defendant's road between Springfield and New York, she was entitled, not on the ground of any express contract with her, but by reason of a transfer of the ticket by the person who had purchased it, to such transportation. But she failed to present to the defendant any evidence of any transfer of her husband's right to transportation, and I cannot see, under such circumstances, that the defendant was bound to recognize the existence of the contract with the plaintiff which would entitle her to transportation to New York.

The case of Jacobs v. Third Ave. Railroad, 71 App. Div. 199, 75 N. Y. Supp. 679, was based entirely upon proof of a traffic agreement between the two roads, which entitled a passenger paying on one road to continue his passage on the connecting road, and the plaintiff, to sustain this judgment, insists that:

"It is clearly apparent that there is a working traffic agreement of some kind between the New Haven & Hartford Company and the Boston & Albany Company."

But there is no evidence of any such traffic agreement, except that there is a connection between the two roads, and the cars run continuously from South Framingham to New York. The tickets calling for passage are separate. A coupon annexed to the original ticket provides for passage over the defendant's road, and the main ticket itself, which includes the so-called contract, provides for passage over the New York Central Road, and there is certainly no evidence which justi-

fies a finding that the conductor on the New York Central Road was the agent of the defendant, or had any authority to act for it. I think, therefore, the evidence failed to show any contract between the plaintiff and the defendant corporation which entitled the plaintiff to transportation over the defendant's road, and that for that reason the complaint should have been dismissed.

There are other questions, relating to damages, presented, which, in view of the conclusion at which I have arrived, it is not necessary to discuss.

The judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

CLARKE and HOTCHKISS, JJ., concur.

DOWLING, J. (dissenting). The ticket purchased by plaintiff's husband and subsequently used by the plaintiff on her trip from South Framingham, Mass., to New York, bore, among other printed matter, the statement, "Good for one first-class passage from Springfield to South Framingham, Mass." The portion of the ticket used over the lines of the New York, New Haven & Hartford Railroad Company simply read "New York to Springfield." In my opinion, the latter part of the ticket was good in either direction, in the absence of any rule, regulation, or contractual agreement limiting it to use in one direction. There might be some question as to whether the portion of the ticket to be used over the lines of the Boston & Albany road, from Springfield to South Framingham, could have been used, save in the direction indicated thereon, namely, traveling in an easterly direction; but whatever doubt might exist upon that subject was removed by the statement of the agent of that road at South Framingham that the ticket was good for use in either direction, and by the confirmation of that statement in the acceptance of the ticket by the conductor of the Boston & Albany train for travel westerly. There is not the slightest offer of any reason why a ticket issued between two points should not be good for travel in either direction between those points, and particularly where, as here, there is no suggestion that the travel in one direction is longer than in the other, or that it is for any reason more burdensome to the carrier. I believe that the contract for transportation was made in the city of New York, where the ticket was purchased, and that contract, as found by the jury, and I think upon evidence justifying such a finding, was a contract permitting travel in either direction between the points named upon the ticket. The contract having been made in this city, the action was maintainable here. Section 1280, Code of Civil Procedure.

This action is not one in tort, but for the breach of a contract of transportation made by the carrier, which includes protection from assault and insult during the time that the passenger is in process of transportation, for the contract of carrying is one to safely carry. When the defendant's conductor insulted the plaintiff for her failure to deliver up to him the ticket, which had already been collected from

her by the Boston & Albany conductor, he knew nothing of the form of the ticket taken up, and his gross abuse of the plaintiff was caused by his belief that she was trying to ride without paying her fare, and not because she was trying to ride in a direction contrary to that which appeared upon part of the ticket. The defense now urged arises solely from the desire to protect the defendant from the consequences of the conductor's ill-considered action. I believe no error was committed in receiving the evidence of the ticket agent at South Framingham as to the validity of the ticket in either direction. He was in charge of the joint office maintained in that place, at which tickets were sold over all the railroads with which the Boston & Albany road was connected, and defendant's counsel admitted upon the trial that he was defendant's agent at the place in question for the purpose of selling tickets. It is true that counsel also contended that he was not the agent for the purpose of binding the defendant on terms that it never agreed to; but it seems to me that a railroad company, which authorizes an agent to represent it in the sale of tickets, also clothes him with an apparent authority to construe and interpret the effect of tickets over the road which he represents, and which he is handling in their interest and on their account. That the agent made no mistake in his statement with respect to the validity of this ticket was corroborated by the action of the conductor in accepting it for transportation, and by the inability of the defendant to show any regulation or rule prohibiting its use for travel in a westerly direction.

I believe that the plaintiff was entitled to judgment, but I think the amount of the verdict was excessive, and was undoubtedly increased by reason of the testimony as to plaintiff's subsequent miscarriage, which I think was too remote to have properly formed a basis for a recovery herein. I therefore am in favor of granting a new trial on the ground that these damages are excessive, unless plaintiff stipulates to reduce the recovery to $1,000, in which case I favor affirmance, with costs.

McLAUGHLIN, J., concurs.